IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HUDDLE HOUSE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| JONATHAN FRIEDOPFER, | ) | NO. _____ |
| | ) | |
| Defendant. | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff HUDDLE HOUSE, INC. ("Plaintiff" or "HHI") brings this action against its former employee, Defendant Jonathan Friedopfer ("Defendant" or "Friedopfer"), for breach of his employee non-disclosure agreement, violations of the federal Defend Trade Secrets Act, the Georgia Trade Secrets Act, the federal Computer Fraud and Abuse Act, and Georgia Computer Systems Protection Act, and tortious interference with contractual relations, as a result of Defendant's deliberate misappropriation and disclosure to at least one third party of a voluminous amount of HHI's confidential and proprietary business and financial information and trade secrets, including sensitive cost, pricing, and product specification information from HHI's supply and distribution division and

numerous financial statements reflecting detailed breakdowns of HHI's sales, expenses and profitability. Defendant's misconduct has caused HHI irreparable harm which is ongoing, and threatens additional disclosure and irreparable harm, for which Plaintiff has no adequate remedy at law absent immediate temporary and preliminary injunctive relief.

## PARTIES

1.      Plaintiff HHI is a Georgia corporation with its principal place of business located at 5901-B Peachtree Dunwoody Road, NE, Suite 450, Atlanta, Georgia 30328.

2.      Defendant Jonathan Friedopfer ("Defendant" or "Friedopfer") is a former employee of HHI. Friedopfer resides at 606 Payne Lane, Woodstock, Georgia,        30188,        in        Cherokee        County,        Georgia.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff has claims for misappropriation of trade secrets under the Defend Trade Secrets Act of 2017, 18 U.S.C. § 1836(c), and claims arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court has pendent or supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.

4.      This Court has personal jurisdiction over Friedopfer because Friedopfer resides in the Northern District of Georgia.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Friedopfer resides in this jurisdiction, and because a substantial part of the events giving rise to the dispute occurred within this district.

## FACTUAL BACKGROUND

### A.      HHI and Its Business and Proprietary Information

6.      HHI and its predecessors have operated Huddle House restaurants since 1964 and franchised Huddle House restaurants since 1966.

7.      HHI restaurants are distinctive, full-service, family dining restaurants that offer all menu items, including breakfast items, twenty-four hours a day.

8.      There are approximately 353 Huddle House restaurants located in approximately 23 states.  Approximately 33 of these are company owned Huddle House restaurants operated by HHI, and the rest are franchised Huddle House restaurants owned and operated by HHI's independent franchisees.

9.      HHI enters into a franchise agreement with each franchisee, pursuant to which it grants to the franchisee a license to use HHI's federally registered "HUDDLE HOUSE®" trademark and HHI's distinctive and proprietary system for retail food sales and restaurant operations (which system includes recipe

3

formulation, food preparation techniques, food and supply specifications and vendor lists, and other matters related to the operation of restaurants), to operate a Huddle House restaurant in a particular location.

10.     In order to promote the uniformity and quality of food products served at Huddle House restaurants, HHI specifies the food products and other supplies, materials and equipment to be purchased and used in connection with operation of Huddle House restaurants.

11.     HHI's franchisees are required to purchase and use food products and supplies that meet HHI's standards and specifications, and to purchase such products and supplies only from HHI or from suppliers approved by HHI.

12.     HHI operates its own purchase, supply, and distribution division ("Food Division"), which acts as a centralized intermediary to purchase food, supplies, materials, and equipment required to operate Huddle House restaurants from approved suppliers, and to resell and deliver those items to franchised and HHI-owned Huddle House restaurants.

13.     By operating its own Food Division, HHI is able to provide a number of benefits for itself and its franchisees.  These benefits include economies of scale in negotiating discounted prices from suppliers in exchange for bulk purchase of food, supplies, materials and equipment; quality and consistency of food and other

4

products; reliability of delivery of products; and purchasing efficiencies for franchisees who are able to order nearly all of their needed food and supplies from one source rather than from many suppliers.

14.     The HHI Food Division negotiates bulk purchase supply contracts with dozens of vendors for hundreds of the required food products, supplies, material, and equipment (collectively "products") used to operate Huddle House restaurants.  These contracts include negotiated discounted bulk purchase prices that are considered confidential and proprietary by both HHI and HHI's vendors.

15.     The HHI Food Division makes bulk purchases of these products from vendors, and has the products delivered to HHI distribution centers where HHI maintains an inventory of these products.

16.     HHI franchisees (and HHI company owned restaurants) place orders with the HHI Food Division for the purchase and delivery of these products for use in their individual Huddle House restaurants, pursuant to purchase orders and at unit prices that HHI sets and that are confidential.

17.     These prices include a markup from the HHI Food Division's unit costs, to cover HHI's costs and overhead involved in operating the Food Division and provide some profit.  HHI charges the same prices for these products to franchisees and to company restaurants.

18.  HHI distributes these products to individual Huddle House restaurants by HHI delivery trucks operated as part of the HHI Food Division.

19.  Much of the business and financial information concerning the HHI Food Division is highly sensitive confidential and proprietary information of HHI. This  confidential and proprietary information includes the identity of HHI approved vendors and suppliers; the identity of the hundreds of specific food products and other products specified for use by Huddle House restaurants, and the particular specifications of those products; the negotiated bulk purchase costs at which HHI purchases the products from the third-party suppliers; the price at which HHI resells the products to HHI franchisees and to operators of company restaurants; the HHI markup margin on these products; and the volume of individual products purchased and resold through the HHI Food Division.

20.  This confidential and proprietary HHI supplier, product, product specification, cost, pricing, margin, and purchase quantity information (collectively, the "HHI Food Division Proprietary Information") is among the most competitively sensitive confidential information maintained by HHI.

21.  HHI also prepares and circulates internally various types and forms of financial statements reflecting detailed levels of confidential and proprietary financial information regarding the sales, expenses, and profitability of HHI and

6

various divisions or units within HHI, including but not limited to the Food Division.

22.     The HHI Food Division Proprietary Information and the financial information in HHI internal financial statements (collectively the "HHI Proprietary Information") derives economic value from not being generally known to, nor readily available or ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use, including but not limited to competing restaurants and restaurant chains.

23.     HHI makes reasonable efforts to maintain the secrecy of the HHI Proprietary Information.   For example, the HHI Proprietary Information is maintained as confidential and available only to HHI employees on a need-to-know basis. Much of the HHI Proprietary Information is available only to the HHI executive committee, to certain HHI management level employees, and to certain employees within the HHI Food Division or accounting or IT departments.

24.     The HHI Proprietary Information is stored on secure HHI computers, which are user name and password-protected.

25.     Other information technology protocols maintained by HHI include selectively limiting which employees may access particular HHI Proprietary Information on HHI's computer network.

7

26.     HHI also stamps or marks certain documents containing HHI Proprietary Information as confidential and/or proprietary to HHI.

27.     HHI franchisees necessarily have access to the confidential list of approved HHI vendors and of products specified and approved by HHI for use in connection with operation of Huddle House restaurants, and to the confidential unit prices that they pay to purchase these products from the HHI Food Division. However, under the terms of the Franchise Agreement they are required to maintain this information as confidential.

28.     Franchisees do not have access to certain other HHI Food Division Proprietary Information, including HHI's product costs or margins, the quantity of products purchased by HHI, or detailed specifications for products used in Huddle House restaurants.  Nor do franchisees have access to HHI's confidential internal financial statements.

29.     Another means by which HHI protects its confidential and proprietary business and financial information is to have employees sign an "Employee Non-Disclosure Agreement, in which they agree to maintain HHI confidential information and trade secrets (collectively defined in the Agreement as "Proprietary Informaton") in confidence and return such information to HHI upon

termination of employment.   A true and correct copy of the Employee Non-Disclosure Agreement signed by Defendant is attached hereto as Exhibit "A"

30.     HHI also has an employee handbook, known as the HHI Team Member Handbook (the "Handbook"), which is distributed to employees at or around the time of their hire.  Among the HHI policies listed in the Handbook is a policy entitled "Non-Disclosure/ Confidentiality" which provides in pertinent part:

> The protection of confidential business information and trade secrets is vital to the interests and success of HHI. Such confidential information includes, but is not limited to, the following:
> - Corporate information, including HHI designs and artwork,
> - **Financial information**,
> - Marketing strategies,
> - Customer/client information,
> - **Vendor/supplier agreements**,
> - Pending projects and proposals, and
> - Personnel/payroll records.
>
> Team Members who improperly use or disclose trade secrets of confidential business information may be subject to disciplinary action, up to and including termination and legal action.

31.     HHI reviews the provisions of the Handbook with all new employees during their post-hire orientation process, and has the employee sign to acknowledge receipt and that they agree to comply with the policies and provisions in the Handbook. A true and correct copy of portions of the Handbook, along with

Defendant's signed "Acknowledgement of Receipt of Handbook," is attached hereto as Exhibit "B."

32.     The Handbook also sets forth the "Network & Computer Usage policy" for employees in Section 4.9, who are allowed to use HHI systems "for company business and for authorized purposes only." The Network & Computer Usage policy further states that "HHI owns the rights to all data and files in any computer, network, or other information system." (*See* Ex. "B", p. 23-24.)

33.     The Handbook also includes provisions regarding company property, including computers, and states that all company property "must be returned to HHI upon resignation or termination." (*See* Ex. "B," p. 15.)

**B.     Defendant's   Employment   with   HHI,   Termination,   and Misappropriation and Disclosure of HHI Proprietary Information in Violation of HHI's Rights**

34.     Defendant Friedopfer began working with HHI in February 2015.

35.     From July 2015 until his termination on October 18, 2017, Defendant was employed by HHI as a Franchise Area Director, with responsibility for liaising and working with certain HHI franchisees operating in the Southeastern United States.

36.     From approximately August 2016 until his termination, Defendant was also working as part of a HHI team involved in developing and implementing

a new back office IT system to be used by HHI franchisees and operators of HHI company owned restaurants. As part of this responsibility, Defendant was provided with expanded access to certain documents on HHI's computer network.

37.   As a condition of his employment, Defendant signed a HHI Non-Disclosure Agreement, which is attached as Exhibit "A", in which he agreed to maintain the confidence of HHI confidential information and trade secrets and return such information to HHI upon termination of employment.

38.   Upon employment with HHI, Friedopfer also received, signed, and agreed to the policies and procedures set forth in the Handbook, including the provisions prohibiting unauthorized disclosure or use of HHI trade secrets or confidential information. A true and correct copy of Friedopfer's signed Acknowledgment of Receipt of Handbook is attached as Exhibit "B."

39.   Defendant was assigned an HHI laptop during his employment for use in performing his job duties.

40.   Defendant downloaded HHI Proprietary Information to the HHI-issued computer during his employment.

41.   On October 18, 2017, Defendant was terminated from his employment with HHI.

42.    Upon termination of his employment, Defendant improperly retained possession of certain HHI property, including the HHI computer he used during his employment, for a period of time before returning the property to HHI.

43.    Defendant did not return the computer to HHI until approximately one week after his termination.

44.    When HHI inspected Defendant's returned computer, HHI learned that Defendant had tampered with the internal hard drive and set a system password on the computer such that HHI could make not make changes to the computer hardware.

45.    Upon information and belief, after Defendant's termination of employment which resulted in HHI terminating Defendant's authorized access  to HHI's computer network, Defendant used his HHI computer to obtain unauthorized access to HHI's computer network and to access and download HHI Proprietary Information from HHI's network without authorization, and also further accessed HHI Proprietary Information already stored on the HHI computer.

46.    On November 2, 2017, HHI's Chief Executive Officer, Michael Abt, received information from a HHI franchisee who told Mr. Abt that Defendant had sent the franchisee an edited tape recording of a secretly taped conversation

between Defendant and Defendant's supervisor in which they were discussing the franchisee.

47.    On November 3, 2017, this same franchisee told Mr. Abt that the franchisee had received a phone call from Janie Robertson ("Robertson"), the principal of another HHI franchisee, who told him that Defendant Friedopfer had just provided Robertson with "a load of information" from HHI, including HHI Food Division product information which included HHI product cost and margin information.

48.    Robertson and her husband are principals of two companies which are HHI franchisees, and those parties are each currently defendants in a lawsuit filed by HHI, in which HHI contends, *inter alia*, that the defendants breached their franchise agreements with HHI by developing and operating a similar and competing family dining restaurant – "That Flippin' Egg" – in connection with which they are improperly using HHI confidential information and trade secrets. That lawsuit is styled *Huddle House, Inc. v. Mary Jane Enterprises, Inc., Fine Foods, LLC, Flippin Holdings, LLC, Mary Jane Robertson, and Robert Robertson,* in the Superior Court of Columbia County, State of Georgia, Case No. 205CV00667 (the "Robertson Lawsuit").

49.     Upon information and belief, Robertson and/or her husband and other family members currently operate at least one "That Flippin' Egg" family dining restaurant.  Thus, Robertson and her husband are not only principals of companies that operate as HHI franchisees, but are also competitors who operate one or more competing family dining restaurants.

50.     The defendants in the Robertson Lawsuit have asserted counterclaims against HHI for, *inter alia,* breach of the franchise agreements and the contractual duty of good faith and fair dealing.  Those counterclaims include allegations relating to HHI negotiating low prices for bulk purchase of products and reselling the products to franchisees at higher prices, and obtaining rebates from HHI suppliers.

51.     After learning that Defendant had provided Robertson with HHI confidential and proprietary information, on November 3, 2017, HHI's counsel sent an email advising Robertson, through her counsel, that the HHI documents provided to her by Defendant were wrongfully misappropriated from HHI, and requesting that Robertson return all such information to HHI and refrain from further use or dissemination of the information.

52.     On November 6, 2017, Robertson's counsel in the Robertson Lawsuit filed a pleading in that lawsuit requesting a judicial conference to address the

confidential and proprietary materials provided by Defendant to Robertson. Robertson's pleading attached a list of over 50 HHI documents provided to Robertson by Defendant; represented that Robertson wants to use these documents in connection with the Robertson Lawsuit; and submitted the documents for *en camera* review by the court. A true and correct copy of this pleading, with the attached listing of HHI confidential documents provided by Defendant to Robertson, is being filed under seal as Exhibit "C."

53.   Robertson's counsel also provided to HHI counsel copies of the HHI confidential documents which Defendant provided to Robertson. These documents consist of well over 50 separate HHI documents (including spreadsheets) totaling over 1,000 pages, each of which contain HHI Proprietary Information. This HHI Proprietary Information falls into three categories:

(a) communications between HHI and individual suppliers of HHI products, reflecting confidential supplier unit pricing to HHI for particular products;

(b) manuals providing detailed and confidential specifications for particular products provided by particular suppliers and approved by HHI for purchase and use in Huddle House restaurants; and

(c)   a number of HHI internal financial statements of various types, containing extensive confidential financial information as to sales, expenses,

15

and profitability of HHI and various divisions and units within HHI, including but not limited to the HHI Food Division

54.     Robertson's counsel represented to HHI counsel that these documents were all of the HHI confidential documents that were provided by Defendant to Robertson, and that Robertson has not forwarded the documents to anyone else except her attorney.  However, Robertson herself, who is not only the principal of a HHI franchisee but also operates a competing family dining restaurant with her husband, already has reviewed the sensitive confidential and proprietary HHI information in these documents which she should not have received

55.     During his employment with and/or after his termination from HHI, Defendant obtained access to and downloaded or otherwise acquired voluminous HHI Proprietary Information, which he deliberately and improperly forwarded and disclosed to Robertson after his termination.

56.     Upon information and belief, Defendant Friedopfer is still wrongfully in possession of various HHI Proprietary Information.  Defendant's disclosure of the HHI Proprietary Information to Robertson demonstrates Defendant's propensity and threat to improperly disclose this Proprietary Information, including highly sensitive HHI product, cost, pricing, and margin information and financial

statements containing detailed information about HHI sales, expenses and profitability, to third parties with the intent and purpose to cause harm to HHI.

57.    On November 6, 2017, HHI's counsel sent to Defendant, via email and hand delivery, a cease and desist letter demanding that Defendant: (a) immediately return to HHI all copies of HHI financial and other documents and information that he took from HHI, including electronic and hard copies; (b) identify each person or entity to which he disclosed any such information; and (c) certify that he would not further disclose or use HHI confidential information and trade secrets in violation of his legal obligations to HHI.  A true and correct copy of this letter is attached hereto as Exhibit "D."

58.    HHI's counsel was subsequently contacted by an attorney representing Defendant, who acknowledged that Defendant had accessed HHI Proprietary Information and forwarded it to Robertson after the termination of his employment with HHI.  HHI counsel has had discussions with Defendant's counsel, including about whether Defendant would consent to entry of a preliminary or permanent injunction, but the parties have been unable to reach agreement.

C. **Harm to HHI from Defendant's Actual and Threatened Misappropriation of HHI Proprietary Information.**

59.    Defendant's misconduct has caused HHI immediate and ongoing irreparable harm, and threatens additional disclosure of HHI Proprietary Information and further irreparable harm, for which HHI has no adequate remedy at law.

60.    Defendant's deliberate and improper disclosure of HHI Proprietary Information to Robertson, and any other improper disclosure of such Confidential Information to other HHI franchisees, has caused and will cause HHI immediate and irreparable harm in a number of ways.  For example, disclosure of HHI's product cost and margin information puts HHI at a competitive disadvantage in setting product prices to be paid by franchisees, as such franchisees may use knowledge of HHI's margins as leverage in negotiating prices from  the HHI Food Division.

61.    Further, there is a substantial risk that HHI franchisees improperly receiving HHI's confidential product cost and margin information would further disclose and use that information to negotiate lower prices from competing and unapproved suppliers of inferior products, resulting in irreparable harm to HHI in the form of lost product sales and profits that would be difficult to calculate, and of damage to the reputation of HHI's business and of Huddle House restaurants.

18

62.   Defendant's improper disclosure also interferes with HHI's contractual relationship with its franchisees, and risks damaging the relationship between HHI and its franchisees, including by causing the franchisees to believe that HHI is charging excessive markups on products without considering the significant HHI costs and overheads involved in operating the HHI Food Division and the benefits, including bulk purchase discounts and purchasing efficiencies, which the franchisees receive through the process.

63.   Wrongful disclosure of the HHI Food Division Proprietary Information has caused and will cause irreparable harm to HHI (and its suppliers) through disclosure of its suppliers' confidential discounted pricing offered to HHI, which HHI has agreed with the suppliers to maintain as confidential.

64.   As mentioned, Robertson and/or her husband are also a competitor of HHI, through their operation of one or more "That Flippin Egg" family restaurants. HHI has been and will be irreparably harmed by the wrongful disclosure of the HHI Proprietary Information to Robertson or to any other competing restaurant or restaurant chain.   For example, Robertson and other competitors could use the highly sensitive HHI cost and pricing information to seek to negotiate lower prices from HHI suppliers or from other suppliers, which would provide unfair competitive advantage to the competitors that they would not otherwise have.

19

65.     Thus, as a direct result of Defendant's intentional wrongful conduct, HHI has suffered irreparable harm and continues to suffer same in the form of actual and threatened misappropriation of the HHI Proprietary Information, Defendant's apparent intent to use such information to damage HHI's reputation and goodwill, loss of business opportunities, damage to relationships with franchisees, and potential loss of sales in an uncertain amount.

.                            **CAUSES OF ACTION**

**COUNT 1**

**BREACH OF CONTRACTUAL NONDISCLOSURE AGREEMENT**

66.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

67.     Defendant executed the Non-Disclosure Agreement, and it is binding upon him.

68.     The Non-Disclosure Agreement adopts the definition of "Trade Secrets" set forth in O.C.G.A. § 10-1-760, which it restates as:

> information including, but not limited to, technical or non-technical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which (i) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from

20

its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. (Ex. A ¶ 1(a).)

69.     The HHI Proprietary Information qualifies as "Trade Secret Information" under the Non-Disclosure Agreement because it includes financial and business information that is not commonly known to the public, for which HHI takes reasonable measures to keep secret.

70.     The Non-Disclosure Agreement defines "Confidential Information" as "data or information, other than Trade Secret Information, that is important to Company, competitively sensitive, and not generally known by the public." (Ex. A ¶ 1(a).)

71.     To the extent that the HHI Proprietary Information does not qualify as "Trade Secret Information," it qualifies as "Confidential Information" under the Non-Disclosure Agreement.

72.     The Non-Disclosure Agreement prohibits disclosure of Trade Secret Information and Confidential Information (defined collectively as "Proprietary Information"). (Ex. A ¶ 2.)

73.     Defendant breached the Non-Disclosure Agreement by disclosing Proprietary Information, including but not limited to the HHI Proprietary Information, to Robertson and possibly others.

74.    The Non-Disclosure Agreement requires employees to return all Proprietary Information "immediately upon termination of employment." (Ex. A ¶ 3.)

75.    Defendant breached the Non-Disclosure Agreement by failing to return HHI's Proprietary Information, including but not necessarily limited to the HHI Confidential Information, upon the termination of his employment with HHI.

76.    The aforesaid wrongful conduct of Defendant proximately caused damages to HHI, in an amount to be determined at trial.

77.    In addition, Defendant's breaches of the Non-Disclosure Agreement is causing and threatening to cause HHI immediate and irreparable harm to its business and good will for which it has no adequate remedy at law.

## COUNT 2

### VIOLATION OF THE DEFEND TRADE SECRETS ACT

78.    Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

79.    The HHI Proprietary Information relates to the sale of food, supplies, materials and equipment which are sold by suppliers to HHI and then resold by HHI to HHI franchisees across multiple state lines, all in interstate commerce.

80.     The HHI Proprietary Information is not public and is made available only to key employees, such as executives and employees with a direct need-to-know regarding such information.

81.     The documents comprising the HHI Proprietary Information are trade secrets under the Defend Trade Secrets Act because they include financial and business information that is not commonly known to the public, for which HHI takes reasonable measures to keep secret.

82.     The HHI Proprietary Information, derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information, including HHI franchisees and competitors.

83.     The documents comprising the HHI Proprietary Information qualify as trade secrets as defined by the DTSA, 18 U.S.C. § 1839(3) and the GTSA, O.C.G.A. § 10-1-761(4).

84.     Defendant acquired HHI Proprietary Information either while employed by HHI and while under a duty to maintain the secrecy of the information and to return the information to HHI upon termination of his employment, and/or by improper means after the termination of his employment  .

85.    Defendant knew that he was not permitted to disclose the HHI Proprietary Information to anyone outside of HHI.

86.    Defendant maintained or wrongfully acquired possession of the HHI Proprietary Information for the wrongful and deliberate purpose and intent of disclosing it to Robertson, and others, in order to harm HHI.

87.    Robertson knew that Defendant would have acquired the HHI Proprietary Information either improperly or under a duty to maintain its secrecy, and that disclosure of the Confidential Information to Robertson was improper and without HHI's consent.

88.    Defendant's disclosure of the HHI Proprietary Information to Robertson amounts to a deliberate and improper misappropriation of HHI's trade secrets in violation of the DTSA.

89.    As a result of Defendant's actual and threatened misappropriation of HHI's trade secrets,  HHI is suffering immediate, ongoing, and irreparable harm. Without immediate and permanent injunctive relief, HHI will continue to sustain irreparable harm for which there is no adequate remedy at law.

90.     HHI is likewise entitled to an award of damages sustained as a result of Defendant's misappropriation of HHI's trade secrets, in an amount to be determined at trial, and to other appropriate monetary relief.

91.     Defendant's actions have been intentional and were meant to cause harm to HHI, entitling HHI to recover punitive damages and an award of costs and reasonable attorneys' fees incurred by Plaintiff in this action.

## COUNT 3

### VIOLATION OF THE GEORGIA TRADE SECRETS ACT

92.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

93.     Documents comprising the HHI Proprietary Information are trade secrets under the Georgia Trade Secrets Act because they include financial and business information that is not commonly known to the public, for which HHI took reasonable measures to keep secret.

94.     The HHI Proprietary Information, derives economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information, including HHI franchisees and competitors.

95.     Defendant acquired the HHI Proprietary Information either while employed by HHI and while under a duty to maintain its secrecy and to return it to HHI upon termination of his employment, or by improper means after termination of his employment with HHI.

96.     Defendant knew that he was not permitted to disclose the HHI Proprietary Information to anyone outside of HHI.

97.     Defendant maintained and/or acquired possession of the HHI Proprietary Information for the wrongful and deliberate purpose and intent of disclosing it to Robertson, and others, in order to harm HHI.

98.     Robertson knew that Defendant would have acquired the HHI Proprietary Information under a duty to maintain its secrecy and/or by improper means, and that disclosure of the Confidential Information to Robertson was improper and without HHI's consent.

99.     Defendant's disclosure of the HHI Proprietary Information to Robertson amounts to a deliberate and improper misappropriation of HHI's trade secrets in violation of the GTSA.

100.    As a result of Defendant's actual and threatened misappropriation of HHI's trade secrets,  HHI is suffering immediate, ongoing, and irreparable harm.

Without immediate and permanent injunctive relief, HHI will continue to sustain irreparable harm for which there is no adequate remedy at law.

101.   HHI is likewise entitled to an award of damages sustained as a result of Defendant's misappropriation of HHI's trade secrets, in an amount to be determined at trial, and to other appropriate monetary relief.

102.   Defendant's actions have been intentional and were meant to cause harm to HHI, entitling HHI to recover punitive damages and an award of costs and reasonable attorneys' fees incurred by Plaintiff in this action.

## <u>COUNT 4</u>
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

104.   Plaintiff realleges and incorporates by reference as if fully set forth herein the foregoing paragraphs.

105.   The Computer Fraud and Abuse Act ("CFAA") prohibits the intentional accessing of a computer without authorization or the exceeding of authorized access to obtain information from any protected computer. *See* 18 U.S.C. § 1030(a)(2).

106.   The CFAA defines "exceeds authorized access" as "to access a computer without authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled to obtain or alter." 18 U.S.C. § 1030(e)(6).

107. The CFAA further defines "protected computer" to mean "a computer...which is used in or affecting interstate or foreign commerce or communication[.]" 18 U.S.C. § 1030(e)(2).

108. Here, HHI gave Defendant access to HHI's computer systems and networks, including to the computer solely to carry out his business responsibilities an HHI's Franchise Area Director.

109. Defendant violated the CFAA by downloading or backing up HHI computer data and files to the hard drive for his HHI computer and then taking that HHI laptop and hard drive with him when was terminated from HHI and thereafter accessing HHI data and information on that laptop and on HHI's computer network without authorization.

110. Defendant's actions have caused damage to Plaintiff and to its business.

111. Defendant's misconduct is causing and will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law, entitling Plaintiff to preliminary and permanent injunctive relief.

## COUNT 5
## GEORGIA COMPUTER SYSTEMS PROTECTION ACT

112. Plaintiff realleges and incorporates by reference as if fully set forth herein the foregoing paragraphs.

28

113.   The Georgia Computer Systems Protection Act ("GCSPA") subjects any person guilty of computer theft to criminal and civil liability..

114.   The GCSPA defines "computer theft" as the use of "a computer or computer network with knowledge that such use is without authority and with the intention of:" (a) "taking or appropriating any property of another;" (b) "obtaining property by any deceitful means or artful practice;" or (c) "converting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property." O.C.G.A. § 16-9-93.

115.   Defendant committed computer theft in violation of the GCSPA by using HHI's computer, without authorization, when he left the employment of HHI, and by subsequently accessing HHI data and information on that computer and on HHI's computer networks without authorization.

116.   As a direct and proximate result of Defendant's computer theft, Plaintiff has been damaged in an amount to be determined at trial.

117.   As a direct and proximate result of Defendant's computer theft, Plaintiff has been damaged in an amount to be determined at trial.

118.   Defendant's conduct is causing and will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law, entitling Plaintiff to preliminary and permanent injunctive relief.

29

## COUNT 6

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

119.   Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

120.   HHI maintains advantageous contractual relations with its franchisee, Robertson.

121.   Defendant is and was aware of the contractual franchise contractual relationship which exists between HHI and Robertson, and between HHI and other franchisees.

122.   Notwithstanding this knowledge, Defendant willfully, intentionally, with malice and without justification or privilege, acted to interfere with HHI's existing contractual franchise relationship with Robertson by wrongfully misappropriating and disclosing the HHI Proprietary Information to Robertson.

123.   HHI and its HHI Food Division maintains advantageous contractual relations with its third-party manufacturers and vendors, with whom it negotiates and enters into contracts for the purchase of products in bulk and at negotiated and confidential prices.

124.   Defendant is aware of the advantageous contractual relationships which exist between HHI and its third-party manufacturers and vendors, and of the confidential nature of the costs at which those vendors sell products to HHI.

125.   Notwithstanding this knowledge, Defendant willfully, intentionally, with malice and without justification or privilege, acted to interfere with HHI's existing contractual relationship with third-party manufacturers and vendors by wrongfully misappropriating and disclosing the HHI Proprietary Information to other parties and thereby violating confidentiality provisions within HHI's existing contracts with the third-party manufacturers and vendors.

126.   Defendant further willfully, intentionally, with malice and without justification or privilege, acted to interfere with HHI's existing contractual relationship with the HHI franchisee to whom Defendant sent an altered tape recorded conversation after Defendant's termination from employment with HHI.

127.   Defendant wrongful and tortious interference with HHI's contractual relationships is causing HHI immediate, ongoing, and irreparable harm.  Without immediate and permanent injunctive relief, HHI will continue to sustain irreparable harm for which there is no adequate remedy at law.

31

128.   HHI is entitled to an award of damages sustained as a result of Defendant's misappropriation of HHI's trade secrets, in an amount to be determined at trial.

129.   Defendant's actions have been intentional and were meant to cause harm to HHI, entitling HHI to recover punitive damages.

## COUNT 7

### RECOVERY OF EXPENSES OF LITIGATION UNDER O.C.G.A. SECTION 13-6-11

130.   Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

131.   Defendant's actions as set forth herein have been in bad faith and have caused HHI unnecessary trouble and expense.

132.   As a result of Defendant's actions, HHI has incurred expenses of litigation, including attorneys' fees, to be recovered in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.   Temporary, preliminary, and permanent injunctive relief enjoining Defendant, directly or indirectly, as follows: (a) prohibiting Defendant and all those acting in concert with him from making any use or disclosure of HHI's

Proprietary Information, and of any other HHI proprietary, confidential, and trade secret information;; (b) requiring Defendant to immediately return to Plaintiff the HHI Proprietary Information and any and all other proprietary, confidential, and trade secret information belonging to HHI, in whatever form, including all copies and derivatives of same, that are in his possession, custody or control; (c) requiring Defendant to identify each and every individual and entity to whom he (or those acting in concert with him) has disclosed any of the HHI Proprietary Information ; (d) providing that Defendant shall refrain from the destruction, alteration, transmittal or movement of <u>any</u> documents, in whatever form, that may contain or reflect Plaintiff's confidential, proprietary and trade secret information, and any computers or electronic devices that contain such information, so that said documents, computers and electronic devices may be gathered and reviewed by counsel for Plaintiff and this Court; and (e) requiring that Defendant provide evidence that is sufficient to conclusively establish his full compliance with the terms set forth in items (a) through (d) above.

2.     Judgment in favor of HHI against Defendant for breach of contract, awarding all available relief, including actual damages and compensatory damages, as well as reasonable costs and attorneys' fees in an amount to be determined at trial.

3.      Judgment in favor of HHI against Defendant, awarding all available relief, including actual damages, compensatory damages and exemplary damages, as well as reasonable costs and attorneys' fees in an amount to be determined at trial, under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

4.      Judgment in favor of HHI against Defendant, awarding all available relief, including actual damages, compensatory damages and exemplary damages, as well as reasonable costs and attorneys' fees in an amount to be determined at trial under the Georgia Trade Secrets Act, 10 O.C.G.A. § 10-1-760 *et seq.*

5.      Judgment in favor of HHI against Defendant, for tortious interference with business relations and for actual and compensatory damages, as well as punitive damages to be determined at trial.

6.      For expenses of litigation as provided for by O.C.G.A. § 13-6-11.

7.      For trial by jury for all claims so triable.

8.      For all other relief as the Court may find just and proper under the circumstances.

Respectfully submitted, this 8thth day of November, 2017.

NELSON MULLINS RILEY & SCARBOROUGH, LLP


*/s/ Michelle W. Johnson*
Mark VanderBroek
Georgia Bar No. 724440
E-Mail: mark.vanderbroek@nelsonmullins.com
Michelle W. Johnson
E-Mail: michelle.johnson@nelsonmullins.com
Georgia Bar No. 759611
Atlantic Station / 201 17th Street, NW / Suite 1700
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HUDDLE HOUSE INC.,                    )
                                      )    CIVIL ACTION FILE
                    Plaintiff,  )    NO. _____
                                      )
v.                                    )
                                      )
JONANTHAN FRIEDOPFER,                 )    **VERIFICATION**
                                      )
                    Defendant.  )
_____  )

PERSONALLY appeared before me the undersigned, who being duly

sworn, deposes and says that he is the Chief Executive Officer of Plaintiff Huddle

House, Inc., and that he has personal knowledge of the allegations of fact made in

the foregoing Verified Complaint, and that those factual allegations are true and

correct to the best of his knowledge, information and belief.

_____
Michael Abt

SWORN TO AND subscribed before me

this ___9___ day of _November_ 2017.

_____
Notary Public for Georgia
My Commission Expires: _Aug. 31, 2019_